IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALEX BRUSCINO, | ) | CASE NO. 1:09 CV 648 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| MICHAEL J.ASTRUE, | ) | |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Alex Bruscino's application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court REVERSES the decision of the Commissioner and REMANDS this case to the Social Security Administration for proceedings not inconsistent with this Memorandum Opinion.

### I. INTRODUCTION and PROCEDURAL HISTORY

On February 6, 2004, Plaintiff filed an application for Supplemental Security Income benefits, alleging that he became disabled on January 4, 2004 due to a lower back injury, left knee and leg problems, chronic anxiety, fatigue, social anxiety, chronic depression, a bad wrist and a neck injury (Tr. 64, 70). Plaintiff was born on July 20, 1960, which made him years 48 years old at the time of the ALJ's determination and a "younger individual" for purposes of the Social Security

regulations (Tr. 11, 37). *See* 20 C.F.R. § 416.963. Plaintiff obtained his GED and attended some college courses (Tr. 64, 255). *See* 20 C.F.R. § 416.964. He has past relevant work experience as a truck driver (Tr. 289-91). *See* 20 C.F.R. § 416.965.

Plaintiff's application for benefits was denied initially and upon reconsideration (Tr. 48-49). Plaintiff requested a hearing, and on January 17, 2008, he appeared with counsel and testified before Administrative Law Judge Peter Bronson (the "ALJ") (Tr. 252-303). Daniel E. Schweid, M.D., a Medical Expert ("ME") and Evelyn Sindelar, a Vocational Expert ("VE") also appeared and testified at Plaintiff's hearing (Tr. 261, 289). On July 25, 2008, the ALJ issued a written decision denying Plaintiff's claim for benefits (Tr. 11-40). The ALJ determined at Step Five of the five-step sequential evaluation[1] that Plaintiff retained the residual functional capacity ("RFC") to perform a

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. § 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – he is not disabled.

(2) If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

(3) If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

(5) Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

limited range of unskilled, light work existing in significant numbers in the national economy and therefore was not disabled (Tr.24, 36-40). Specifically, the ALJ determined that Plaintiff's ability to work was limited as follows: unable to lift and carry more than 20 pounds occasionally or 10 pounds frequently; must have the option to, at will, go from standing or walking to sitting and vice versa; unable to operate a motor vehicle as part of the job; unable to work in proximity to unprotected heights, dangerous machinery, or other workplace hazards; unable to bend, stoop, crouch, kneel or crawl more than occasionally; able to perform only simple, routine tasks and low stress work; unable to follow complex or detailed instructions or to do complex or detailed tasks; unable to do work involving high or strict production quotas; unable to perform assembly line or piece rate work; unable to perform work involving negotiation, arbitration, confrontation or other intense interpersonal interactions with co-workers, supervisors, or the public; unable to do work that involves more than incidental contacts with the public or limited contact, whether or not incidental, with co-workers and supervisors; and unable to do work in which he would be responsible for the health, welfare, or safety of others (Tr. 24). The ALJ then determined, based on the VE's testimony, that although Plaintiff's RFC precluded him from performing his past relevant work, Plaintiff nevertheless could perform the jobs of housekeeper, bench assembler, and gasket inspector (Tr. 39). The Appeals Council denied Plaintiff's request for review on February 18, 2009, thereby making the ALJ's decision the final decision of the Commissioner (Tr. 4-6). On appeal, Plaintiff claims that the ALJ's decision is not supported by substantial evidence.

## II.  DISABILITY STANDARD

A claimant is entitled to receive Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. § 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason

of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. § 416.905.

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. ANALYSIS

A.   **Whether the ALJ Erred in Evaluating Plaintiff's Mental Impairments**

Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of two of his treating sources, Dr. Moore and Dr. Alcorn, and to the opinion of the ME who testified at Plaintiff's hearing. Plaintiff further argues that because the ALJ failed to include a limitation in the RFC assessment related to his inability to sustain attention, concentration and pace throughout the workday, the RFC assessment is not supported by substantial evidence.

The weighing of medical evidence is the province of the Commissioner. Where there are conflicting medical opinions resulting from essentially the same objective medical data, it is the responsibility of the ALJ to resolve those conflicts. See *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *see also Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 803 (6th Cir. 2008). However, the ALJ is bound by the Social Security Regulations when weighing the medical evidence. See *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-45 (6th Cir. 2004). The regulations provide that the opinion of a treating physician generally should receive generally should substantial deference, and complete deference if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 416.927(d)(2); 404.1527(d)(2); *Shelman v. Heckler*, 821 F.2d 316, 320 (6th Cir. 1987). A treating physician's opinion typically should be afforded greater weight than those of physicians who have examined the claimant on consultation or who have not examined the claimant at all. See *Meece v. Barnhard*, 192 Fed. Appx. 456, 461 (6th Cir. 2006); *Wilson*, 378 F.3d at 544; *Shelman*, 821 F.2d at 321; *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). However, an "ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, [and] may reject determinations of such a physician when good reasons are identified for not

accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988).

If an ALJ rejects the opinion of a treating physician, he must articulate clearly "good reasons" for doing so. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). In order to be "good," those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. Unless an ALJ's failure to adhere to this procedural requirement amounts to a harmless, *de minimis* procedural violation, the error is cause for remand. Specifically, the Sixth Circuit has held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).

Dr. Moore completed a state agency questionnaire in August 2004 indicating that he had seen Plaintiff for nearly six months after his December 2003 release from prison (Tr. 135-37). Dr. Moore reported that Plaintiff had "significant mood fluctuations between being very anxious to being very depressed" (Tr. 136). He noted that Plaintiff had very poor concentration and a difficult time staying on task or even talking about one subject (Id.). He also noted that Plaintiff had significant social anxiety, that he made poor decisions, and that tolerance for stress and frustration were very low (Tr. 136-37). However, Dr. Moore also noted that Plaintiff did not have any significant restrictions in his daily activities (Tr. 136). He diagnosed Plaintiff with post-traumatic stress disorder ("PTSD") (Tr. 137).

In October 2005, Dr. Moore described Plaintiff's condition in a letter to his counsel (Tr. 180-81). Dr. Moore noted that he had treated Plaintiff from February 2004 to December 2004, at which point Plaintiff moved to Florida (Tr. 180). Dr. Moore also noted that Plaintiff asked him to provide a summary of their sessions rather than his entire record and confidential office notes, and that Dr. Moore did not conduct a formal assessment for disability purposes (Id.). In the letter, Dr. Moore reported that Plaintiff was oriented to person, time and place and that his affect varied appropriately with the conversation, but that Plaintiff's ongoing anxiety and pessimistic perspective of the world influenced his mood and judgment (Id.). He diagnosed Plaintiff with PTSD, major depression–recurrent, and social anxiety (Tr. 180). Dr. Moore opined that Plaintiff's negative assumptions, extreme mood swings, and cognitive impairment have estranged him from people and would make it extremely difficult for him to work with others (Tr. 180-81). He further opined that it would be "nearly impossible for [Plaintiff] to be gainfully employed at this time," and that Plaintiff would "need[] extensive psychological rehabilitation before he can be successful in the workplace" (Tr. 181).

In his written decision, the ALJ described in great detail Dr. Moore's August 2004 responses to the state agency questionnaire and set forth in its entirety Dr. Moore's October 2005 letter to Plaintiff's counsel. The ALJ indicated that he considered Dr. Moore's August 2004 responses and stated that, "[t]o the extent that Dr. Moore's opinions implied that [Plaintiff] had no ability at all to tolerate any stress in a workplaces, I gave no weight to such an opinion because such an opinion was not supported by anything else in this record that was said by Dr. Moore or by anyone else who treated [Plaintiff]" (Tr. 30). The ALJ also stated that he considered and gave weight to the observations included in Dr. Moore's October 2005 letter to counsel, except Dr. Moore's opinion that it would be "nearly impossible for Plaintiff to be gainfully employed at this time. He needs

extensive psychological rehabilitation before he can be successful in the workplace" (Tr. 31). The ALJ explained that he gave little weight to this portion of Dr. Moore's opinion because it "involve[d] vocational issues that are beyond Dr. Moore's expertise as a psychologist and because it amounted to a "conclusory opinion about whether or not [Plaintiff] could work" (Id.). As the ALJ noted, a doctor's opinion on an issue reserved to the Commissioner, even if issued by a treating physician, is not entitled to any special deference. Thus, although the ALJ was required to consider this portion of Dr. Moore's opinion, as he did in this case, he was not bound by it.

      The ALJ also noted that Dr. Moore declined to provide a copy of Plaintiff's psychological record pursuant to the request of Plaintiff's counsel and that Dr. Moore chose instead to comply with Plaintiff's request for him to submit a summary of their sessions. The ALJ then stated that it would have been more helpful to him – as well as to Plaintiff's case – had Dr. Moore submitted the record and office notes in addition to the letter (Tr. 32). The regulations provide that the more evidence a medical source presents to support his opinion and the better his explanation for his opinion, the more weight that opinion should receive. 20 C.F.R. § 416.927(d)(3). Additionally, although Plaintiff may have had understandable reasons for wanting Dr. Moore's "confidential office notes" omitted from the record in this case, the Court notes that the burden of providing evidence that is complete and detailed enough to enable the Commissioner to determine whether a claimant is disabled rests with the claimant. See Landsaw v. Secretary of Health & Human Servs., 803 F.2d 211, 214 (6th Cir. 1986); see also 20 C.F.R. § 416.912(c). Dr. Moore's contemporaneous office notes and file may have supported – or tended to negate – the conclusions contained in his October 2005 letter; without them, it may have been more difficult for the ALJ to gauge the degree to which the medical evidence supported Dr. Moore's opinions. On the other hand, the Court does not find that it is appropriate necessarily to make a negative inference about Dr. Moore's notes simply because they are not

available. More importantly, at no point in the course of this discussion does the ALJ explain why he apparently rejected Dr. Moore's opinions regarding Plaintiff's ability to concentrate and focus.

Dr. Alcorn examined Plaintiff in June 2004 upon referral from Dr. Moore (Tr. 95). During the examination, Plaintiff reported that he spent five years in prison after pleading guilty to a sex crime against a minor (Id.). Plaintiff regretted pleading guilty because he felt that the prosecution's proof would be insufficient at trial (Id.). Plaintiff also reported a history of past drug abuse and past arrests for selling cocaine and domestic violence (Id.). However, Plaintiff indicated that he stopped his substance abuse years earlier (Id.). Dr. Alcorn noted that Plaintiff had symptoms of Attention Deficit Disorder and prescribed Ritalin (Id.). In July 2004, Dr. Alcorn noted that Plaintiff's symptoms had improved, but that the Ritalin produced varied effects (Tr. 96).

Dr. Alcorn completed a form regarding Plaintiff's mental capacity (Tr. 197-197A). Dr. Alcorn opined that Plaintiff's ability to maintain regular attention and be punctual, to relate to co-workers, and to function independently without special supervision was good (Tr. 197). He opined that Plaintiff's ability to follow work rules, use judgment, respond appropriately to changes in a routine setting, deal with the pubic, interact with supervisors, deal with work stresses and complete a normal workday and workweek without interruption from psychologically based symptoms was fair (Tr. 197-197A). He further opined that Plaintiff's ability to maintain attention and concentration for periods of two hours and work in coordination or proximity to others without distraction was poor or nonexistent (Tr. 197-197A). Dr. Alcorn also opined that Plaintiff's ability to understand, remember and carry out simple job instructions was very good or unlimited; his ability was good for detailed but not complex job descriptions; and his ability was fair for complex job instructions (Tr. 197A). Finally, Dr. Alcorn noted that Plaintiff had an unlimited or very good ability to maintain appearance and leave home on his own; a good ability to socialize or manage funds or schedules;

and a fair ability to behave in an emotionally stable manner and relate predictably in social situations (Id.).

The ALJ described in great detail the content of Dr. Alcorn's opinions. The ALJ then stated that he gave weight to Dr. Alcorn's opinions that [Plaintiff]'s abilities to do certain things were 'Fair' or 'Good' or 'Unlimited/Very Good,' and those opinions are reflected in the [RFC . . . ], because those opinions were consistent with the weight of the evidence" (Tr. 32). He further stated that he "gave no weight to Dr. Alcorn's opinions that [Plaintiff]'s abilities to do certain things were 'Poor or None' for several reasons" (Tr. 32). The ALJ explained that "Poor or None" was defined on the form that Dr. Alcorn completed to mean: "No useful ability to function in a competitive setting. May be able to perform in a sheltered setting" (Id.). The ALJ then stated, "[t]he wording of this definition effectively turned this part of the Statement into a conclusory opinion about whether or not [Plaintiff] could work" and necessarily elicited responses from Dr. Alcorn that were beyond his expertise (Id.). In explaining the implications of the form's definition of "Poor or None," the ALJ commented, "[t]hus, for example, inability to work in coordination with or in proximity to others without being unduly distracted or distracting does not automatically limit a person to working only 'in a sheltered setting' or in an insignificant number of jobs 'in a competitive setting'" (Tr. 32). The ALJ then stated that, "[f]or reasons discussed elsewhere in this Decision, I am persuaded that [Plaintiff] can 'maintain attention and concentration for extended period of 2 hour segments' when he wants to or has to, but only when he wants to or has to, and that there are very few things that make [Plaintiff] want to or have to" (Tr. 32-33).

The ALJ does not indicate where the reasons for his finding that Plaintiff can "'maintain attention and concentration for extended period of 2 hour segments' when he wants to or has to, but only when he wants to or has to, and that there are very few things that make [Plaintiff] want to or

have to," (tr. 32-33), appear in his written decision.  However, it seems that some of these "reasons discussed elsewhere" may appear in the ALJ's assessment of Plaintiff's credibility.  The ALJ found that Plaintiff's statements, including those regarding his inability to maintain concentration, persistence and pace, were less than fully credible.  In explaining his reasons for this finding, the ALJ noted Plaintiff's statement in a Disability Report completed in March 2004 that around February 1998 he "couldn't do much at all anymore without having several problems" (Tr. 28).  The ALJ found questionable the veracity of this statement because "[t]he fact is that [Plaintiff] stopped working at that time because of the legal difficulties that he was having at that time, legal difficulties that later resulted in his incarceration" (Tr. 28).  He also noted Plaintiff's statements to Dr. Alcorn that he was "a successful businessman at one point, owning his small, but growing, trucking business" and that "[h]e lost everything when he went to prison" (Tr. 28).  Plaintiff also told Dr. Alcorn that he regretted not taking his sex crime case to trial because he felt that the evidence against him was insufficient.  According to the ALJ, this statement indicates that Plaintiff "was able to maintain mental concentration, mental persistence and mental pace on a complex subject that he cared about to the point that he could analyze the subject and reach a conclusion about it" (Tr. 28).  The ALJ also cited in support of his credibility finding Plaintiff's statement during Dr. Smith's consultative examination that "[h]e wouldn't go to the chow hall but he did go to his job at night" (Tr. 29).  According to the ALJ, this statement shows that Plaintiff "had a job . . . and that he had sufficient mental concentration, mental persistence, and mental pace to go to it and do it [and] . . . to do[] whatever he has to do" (Tr. 29).  The ALJ also cited the observations of Cathy, "the woman who was living with [Plaintiff]," in support of his adverse credibility finding.  Cathy stated that Plaintiff could read a magazine or newspaper article but that he tended to lose interest; that Plaintiff could pay his bills; that Plaintiff was very personable with her and with people in public, and that

he could follow a conversation; and that Plaintiff would go with her to the store or to dinner and that he liked to window shop, but would lose interest if nothing excited him (Tr. 28). The ALJ stated that although Cathy's statements

> show that [Plaintiff] tended to lose interest in many things often and quickly[,] [ . . . they] tell me not that [Plaintiff's] impairments inherently precluded him from maintaining mental concentration, persistence, and pace, but that he was not interested in many things. Not being interested in many things can be . . . a symptom of depression. [Plaintiff]'s lack of interest in many things confirms that depression is a severe impairment in [Plaintiff]'s case . . . . It does not confirm that [Plaintiff]'s residual functional capacity stated above . . . should include greater or additional restrictions

(Tr. 29).

Most of the ALJ's explanations for discounting Plaintiff's credibility are not supported by the record, and some stretch notions of common sense. For instance, Plaintiff's ability to "regret" taking a guilty plea and going to prison based on his belief that the prosecution's evidence was inadequate is not analogous to an ability to sustain attention, concentration persistence and pace throughout the work-day. Similarly, Plaintiff's ability to go to and do his job at night while in a sheltered environment such as prison would not demonstrate necessarily an ability to sustain attention, concentration and pace consistently in a competitive work environment. Even the ALJ's explanation with regard to Cathy's statements – i.e., that they demonstrate that Plaintiff has depression but not greater limitations than those reflected in the RFC – make little sense. That a person's symptoms stem from a particular impairment says little, if anything, about the severity of the symptoms or the impairment. Ultimately, although the ALJ writes at great length regarding Dr. Alcorn's opinions and his "reasons" for discrediting Plaintiff, at no point does the ALJ explain why he rejected Dr. Alcorn's opinion that Plaintiff's ability to maintain attention and concentration for periods of two hours was poor or nonexistent. Dr. Moore, another of Plaintiff's treating physician's,

opined similarly that Plaintiff's concentration and focus were very poor.  Although the ALJ explained that he gave little weight to Dr. Moore's opinion that Plaintiff was unemployable, at no point in the written decision does the ALJ address directly Dr. Moore's opinions regarding Plaintiff's ability to concentrate and focus.

The Court acknowledges that the record contains some evidence supporting the ALJ's finding that Plaintiff has moderate limitations in these areas.  For instance, Dr. Smith opined that Plaintiff's ability to maintain concentration, persistence and pace was moderately impaired. However, Dr. Smith examined Plaintiff only one time at the request of the Social Security Administration, and the ALJ did not address whether and why Dr. Smith's opinion with respect to this issue was entitled to more weight than the opinions of Plaintiff's treating doctors.  The ME, Dr. Schweid, initially opined that Plaintiff's activities of daily living, ability to maintain social functioning, and concentration, persistence, and pace were all moderately impaired (Tr. 275). However, following a lengthy discussion of the medical evidence, Dr. Schweid also noted that "the treating psychiatrist, and the treating psychologist, and the consultative examiner really implied that sustainability would be marginal at best.  And one of them said – Dr. Moore simply said he can't be gainfully employed" (Tr. 280).  Dr. Schweid then expressed his agreement with these sources to the extent that "sustainability" would be an issue for Plaintiff (Tr. 287).  More importantly, the ALJ also did not explain whether and why Dr. Schweid's initial opinion that Plaintiff was moderately impaired in his ability to maintain concentration, persistence and pace deserved more weight than the opinions of Plaintiff's treating physicians that Plaintiff's concentration was very poor.  Without some analysis from the ALJ on this issue, the Court cannot say that the ALJ complied with the procedural requirement set forth in the regulations that the ALJ give "good reasons" for rejecting the opinions of Plaintiff's treating physicians.  *See* 20 C.F.R. § 416.927(d)(2) ("We will always give

good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p (explaining that "good reasons" must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight"). As noted above, such failure generally is cause for remand. *See e.g.*, *Wilson*, 378 F.3d at 544.

Plaintiff also claims that Dr. Schweid opined that Plaintiff would be off-task six minutes of every hour. As Defendant notes, however, that claim mis-characterizes the hearing testimony. Although the ALJ initially asked the ME whether he agreed with Plaintiff's attorney that Plaintiff would be off-task six minutes of every hour, that question was followed by some discussion of the medical evidence rather than a direct answer to the question. The ALJ then asked the ME whether *Dr. Moore's opinion* was consistent with an RFC that included the limitation "unable to maintain focus for six minutes out of every hour" (Tr. 297). The ME then stated, "[w]ell, I'd be surprised if he – I would think it would be – [ . . . ] – more than six minutes out of the hour" (Id.). The sequence of this testimony strongly suggests that the ME's statement regarding the inability to focus six minutes of every hour is in response to the ALJ question about Dr. Moore's opinion, not the ALJ's earlier question as to whether or not the ME agreed with the six-minute limitation. In other words, this testimony almost certainly does not amount to an opinion regarding Plaintiff's ability to focus. At no other point during the hearing does the ME offer any opinions with respect to the six-minute limitation. Thus, to the extent that Plaintiff argues that the ALJ erred by ignoring the ME's opinion on this point, that argument is meritless because the record strongly suggests that the ME did not offer such an opinion.

Finally, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because he failed to include in it a limitation for Plaintiff's inability to sustain work

-14-

throughout the day. For the reasons explained above, the ALJ did not explain adequately why he rejected the opinions of Plaintiff's treating physicians, Dr. Moore and Dr. Alcorn, with respect to this issue. Unless an ALJ's failure to adhere to the requirement that he give "good reasons" for rejecting a treating doctor's opinion amounts to a harmless, *de minimis* procedural violation, the error is cause for remand. The *Wilson* Court explicitly left for another day the question of whether a *de minimis* violation of the procedural requirement could qualify as harmless error but noted a few situations in which it might: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possible credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [20 C.F.R. § 416.927(d)(2)]-the provision of the procedural safeguard of reasons-even though she has not complied with the terms of the regulation." *Wilson*, 378 F.3d at 547. None of these situations is at play here. The ALJ specifically found that Plaintiff's ability to maintain concentration, persistence and pace was moderately impaired, whereas Dr. Alcorn and Dr. Moore opined that Plaintiff's abilities in these areas was poor, and the Court cannot say that the treating physicians' opinions on this point were "patently deficient" such that the Commissioner could not possibly credit them. Furthermore, the Court does not find that the ALJ has met the goal of the procedural safeguard. For all of its lengthy summaries of the medical evidence, the ALJ's written decision fails to make clear the ALJ's reasons for rejecting some portions of the medical opinion evidence and crediting others. Thus, the Court finds that remand is required as a result of the ALJ's failure to give "good reasons" for rejecting the opinions of Plaintiff's treating physicians regarding Plaintiff's ability to maintain concentration, persistence and pace.

**B.     Whether the ALJ Erred in Evaluating Plaintiff's Physical Impairments**

Plaintiff points to the deterioration of his condition in February 2007 and seems to argue that

because his condition at that point no longer allowed him to stand and walk for 6 hours out of an 8 hour day and therefore to perform a "full range of light work," the ALJ's RFC assessment necessarily is not supported by substantial evidence.  However, as Defendant correctly notes, the ALJ in this case did not find that Plaintiff was capable of performing a "full range of light work" or that Plaintiff retained the capacity to stand and walk for a full 6 hours out of an 8 hour day.  Rather, the ALJ determined that Plaintiff retained the capacity to lift up to 20 pounds occasionally and 10 pounds frequently, provided Plaintiff was allowed "to, at will, go from standing or walking to sitting and from sitting to either standing or walking" and that the job accommodated a number of other restrictions. Thus, to the extent Plaintiff argues that the ALJ erred by failing to include in the RFC assessment restrictions related to standing and walking, that argument is meritless because the ALJ accommodated those limitations his RFC assessment.

Plaintiff also appears to argue that the RFC assessment was based on a hypothetical that did not accurately represent Plaintiff's capabilities, and that therefore the VE's testimony in response could not serve as substantial evidence to support the ALJ's conclusion that Plaintiff was not disabled. Under *Varley v. Sec. of Health and Hum. Serv.*, 820 F.2d 777, 779 (6th Cir. 1987), "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" Should the hypothetical fail to accurately describe a claimant's physical and mental impairments, the defect is fatal to both the vocational expert's testimony and the ALJ's reliance upon that testimony.  See *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).  As explained above, the ALJ failed to comply with the procedural requirement to give good reasons for rejecting the opinions of Plaintiff's treating physicians regarding Plaintiff's ability to maintain concentration, persistence and pace.  Because the ALJ's

failure did not amount to a *de miminis*, procedural violation, the case must be remanded.  Upon remand, the ALJ will need to revisit Plaintiff's RFC and the extent, if any, to which Plaintiff can perform work existing in significant numbers in the national economy.

## V.  DECISION

For the foregoing reasons, the Court finds that the decision of the Commissioner that Plaintiff was not disabled is not supported by substantial evidence.  Accordingly, the Court REVERSES the decision of the Commissioner and REMANDS this case to the Social Security Administration for proceedings not inconsistent with this Memorandum Opinion.

> s/ Kenneth S. McHargh  
> Kenneth S. McHargh  
> United States Magistrate Judge

Date: February 16, 2010.